IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RORY M. WALSH,** | : |
| **Plaintiff** | : Civ. No. 1:14-CV-1503 |
| v. | : |
| **BRIAN J. GEORGE,** *et al.*, | : |
| **Defendants** | : Judge Sylvia H. Rambo |

### **M E M O R A N D U M**

Plaintiff Rory M. Walsh ("Walsh"), proceeding in this matter *pro se*,[1] brings claims under the Constitution and several federal statutes alleging, *inter alia*, that the United States owes him past monies due for medical disability payments, and that the individual defendants interfered with his efforts to amend his military record, publicly slandered him, intercepted his mail, and harassed him and his family. The defendants[2] have moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss

---

[1] Although the court must view a *pro se* litigant's complaint under a lenient standard, *see infra* Part II, Walsh is familiar with the legal system. Walsh is—to say the least—litigious, having filed multiple unsuccessful lawsuits against military and federal employees over the past 23 years. *See, e.g., Walsh v. United States of America, et al.*, Civ. No. 1:05-cv-0818, 2008 WL 2412968 (M.D. Pa. June 10, 2008), *aff'd* 328 F. App'x 806 (3d Cir. 2009) (alleging a 1985 murder attempt by General Hagee resulting in life-long health effects, surveillance of his phone and mail, and multiple break-ins of his home); *Walsh v. Hagee, et al.*, Civ. No. 1:11-cv-2215 (D.D.C.) (alleging 2006 murder attempt by General Hagee, interference with access to courthouse, withholding of VA benefits, and interference with medical treatment); *Walsh v. FBI, et al.*, Civ. No. 1:11-cv-2214 (D.D.C.) (asserting FOIA claims regarding harassment, surveillance, and mistreatment by the VA); *Walsh v. Jones, et al.*, Civ. No. 1:13-cv-0928 (D.D.C.) (alleging General Jones had the Secret Service break into his home for years and has kept him under surveillance); *Walsh v. Jones, et al.*, Civ. No. 1:13-cv-0844 (D.D.C.) (asserting FOIA/Privacy Act complaint seeking documents regarding alleged break-ins and surveillance of his home).

[2] The defendants are the United States of America, the Department of the Navy, and six current and former military officials – Brian J. George ("George"), W. Dean Pfeiffer ("Pfeiffer"), R. P. Buttram ("Buttram"), M. Newman ("Newman"), James F. Amos ("Amos"), and James L. Jones Jr. ("Jones"). (*See* Doc. 1.) George serves as the head of the Board for Correction of Naval Records ("BCNR") Discharge Review Board, and Pfeiffer served as the BCNR's Executive Director until he

(continued...)

the complaint for failure to state a claim.  For the following reasons, the motion will be granted in its entirety.

I.    **Background**

  A.    **Factual Background**[3]

Walsh is a retired United States Marine Corp captain who served during the Peacetime and Gulf War Era and was repeatedly recognized and decorated for his military service.   (Doc. 45-1, p. 105 of 178; *see* Doc. 1, ¶ 5.)  Walsh retired in 1996 (Doc. 45-1, p. 43 of 178), and is allegedly disabled due to his significant service-related injuries (Doc. 1, ¶ 21).

In his complaint, Walsh alleges that Jones has adversely impacted his repeated attempts to correct his military record to reflect certain awards that he received during his service.  (*Id.* at ¶ 6.)  Walsh claims that Jones has been harassing and "striking at" him for more than twenty years because Walsh witnessed Jones engage in misconduct while serving as a commanding officer of a marine expeditionary unit in 1986 and 1990.  (*Id.* at ¶¶ 6, 25.)  Most recently, Jones

---

[2](...continued)
retired in 2014. (Doc. 45, p. 6 of 25 n.2.)  Buttram serves as the Assistant Branch Head for the Military Awards Branch ("MMMA-3") at Headquarters, United States Marine Corps ("HQMC"). (*Id.*)  Newman currently serves as Deputy, Chief of Naval Operation Awards Branch, but became involved with Walsh while previously serving as Head, Service Awards Section, Military Awards Section, MMMA-3, HQMC.  (*Id.*)  Amos recently served as Commandant of the Marine Corps, which tenure ended on October 17, 2014.  (*Id.*)  Jones served as Commandant of the Marine Corps and as a National Security Advisor to President Barack Obama.  (*Id.*)

[3] In accordance with the standard of review for a motion to dismiss, the court will accept as true all well-pleaded factual allegations and view them in the light most favorable to Plaintiff.  *See infra* Part II.  Because the plaintiff is proceeding *pro se*, the court has liberally construed the pleading's averments.  *Id.*  However, the statements contained herein do not reflect the opinion of the court as to the veracity of the allegations.

interfered with a December 24, 2010 Application for Correction of Military Record that Walsh filed with the BCNR seeking the missing awards.[4] (*Id.* at ¶ 9.)  In response to the BCNR's inquiry regarding his entitlement to the awards (*see* Doc. 45-1, p. 5 of 178; Doc. 1, 9), Buttram, Newman, and Amos, acting at the direction of Jones, issued two falsified letters omitting Walsh's entitlement to the Kuwait Liberation Medal and the 6th Award of the Sea Service Deployment Ribbon,[5] and subsequently refused to correct their omissions notwithstanding Walsh's clear entitlement to the awards (Doc. 1, ¶¶ 10, 16).  As a result of these false letters, the BCNR denied Walsh's petition on April 23, 2013.  (Doc. 1, ¶ 11; *see* Doc. 45-1, pp. 108-110 of 178.)

Additionally, in the process of denying the petition, George and Pfeiffer slandered Walsh to Marine Corps Base Quantico, denied Walsh's Freedom of Information Act ("FOIA") requests,[6] and unlawfully refused Walsh's request to appear before the Naval Discharge Review Board ("NDRB").  (Doc. 1, ¶¶ 12-13.)  Further, when Walsh attempted to check on the status of his pending petition,

---

[4] Although the complaint generally states that Walsh approached the BCNR to correct his record and does not specify when he did so, it appears that Walsh is referring to the December 24, 2010 Application for Correction of Military Record that he filed under the provisions of 10 U.S.C. § 1552. (*See* Doc. 45-1, pp. 3-5 of 178.)  Presumably after receiving no response, Walsh electronically resubmitted the application to the Secretary of the Navy on January 2, 2013.  (Doc. 45-1, p. 3 of 178.)

[5] In his complaint, Walsh initially states that Buttram and Newman issued two false letters wherein they omitted his entitlement to *four* awards (Doc. 1, ¶ 6), but later states that Buttram, Newman, *and* Amos issued the false letters wherein they omitted his entitlement to *two* awards, the Kuwait Liberation Medal and the 6th Award of the Sea Service Deployment Ribbon (*id.* at ¶ 16).  The court will assume for purposes of this motion that Walsh is asserting a claim against all three defendants regarding his entitlement to the two named awards.

[6] Walsh is not asserting an FOIA claim.  (Doc. 1, ¶¶ 13 n.2, 18 n.3.)

Pfeiffer directed armed security guards to deny Walsh's access to the Navy Annex in Arlington, Virginia.  (*Id.* at ¶ 12.)

In addition, George and Pfeiffer falsely stated in their April 22, 2013 decision denying his petition that the Navy "*medically retired* [Walsh] once his incurable disease arose."  (*Id.* at ¶ 11 (emphasis added).)  Walsh asserts that this erroneous statement entitles him to an award of missing disability payments in the amount of $693,264.00, and to an advance to the rank he would have held but for his disability.  (*Id.* at ¶ 11.)

Walsh further claims he has been continually harassed by Jones for the last twenty years.  On May 17, 2014, using the FBI and illegal surveillance, Jones "stalked and struck" at Walsh and his family at a Red Robin restaurant in Harrisburg, Pennsylvania, and, later the same day, at the parking lot of a Best Buy store.  (*Id.* at ¶ 25.)  "[R]ecognizing Jones[']s] presence and that he was there to create an incident," Walsh "dodged both, made his purchase[,] and left."  (*Id.*)  Over the past three years, Jones and Amos have also allegedly intercepted correspondence regarding Walsh from the Secretary of the Navy to Congressman Scott Perry for the purpose of concealing their crimes and to convey threats to Walsh and his family.  (*Id.* at ¶ 23.)

### B. Procedural Background

Walsh filed the instant complaint on August 1, 2014.  (Doc. 1.)  In the complaint, Walsh asserts jurisdiction under 42 U.S.C. § 1983 ("Section 1983); the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671; the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12134; and the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-706.  (Doc. 1, ¶ 3.)  In Count I, Walsh sets forth claims for "false official statements," defamation, and "false light" against

Newman, Buttram, Amos, and Jones, pursuant to 18 U.S.C. § 1001 and Section 1983 related to the falsified letters.  (*Id.* at ¶¶ 16-17.)  In Count II, Walsh asserts a claim against Newman, Buttram, Amos, and Jones for denying his petition to correct his military record, which he alleges is in violation of 10 U.S.C. § 1552 and his Fourteenth Amendment right to due process, and a claim against George and Peiffer for denying him access to appear before the NDRB, which he alleges is in violation of 10 U.S.C. § 1553, SECNAVINST 5420.174D, and his due process rights.  (*Id.* at ¶¶ 18-20.)  In Count III, Walsh sets forth an ADA claim against George and Peiffer related to his being denied access to appear before the NDRB.  (*Id.* at ¶ 21.)  In Count IV, Walsh brings a claim against the Navy for failure to pay missing disability payments, which he alleges is in violation of federal law and Department of Defense Directives.  (*Id.* at ¶ 22.)  In Count V, Walsh asserts claims against Jones and Amos for interference with congressional correspondence related to their alleged interception of the Secretary of the Navy's mail, which he alleges is in violation of Section 1983.  (*Id.* at ¶¶ 23-24.)  Finally, in Count VI, Walsh asserts a claim against Jones for interstate stalking, which he alleges is in violation of "criminal laws" and Section 1983.  (*Id.* at ¶ 25.)

On November 10, 2014, the defendants moved to dismiss all of Walsh's claims pursuant to Rule 12(b)(6).  (Doc. 38.)  Walsh opposes.  (Doc. 50.)

**II.      Legal Standard**

A motion to dismiss for failure to state a claim, filed pursuant to Federal Rule of Procedure 12(b)(6), tests the legal sufficiency of the complaint.  *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993).  In reviewing the motion, a court "may

consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (2004).  The motion will be properly granted when, taking all well-pleaded factual allegations and inferences drawn therefrom as true, the moving party is entitled to judgment as a matter of law. *Markowitz v. Ne Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990).

        To survive a motion to dismiss for failure to state a claim, the complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  While the 12(b)(6) standard does not require "detailed factual allegations," there must be a "'showing,' rather than a blanket assertion of entitlement to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231-32 (quoting *Twombly*, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Instead, the "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  In short, the motion to dismiss should be granted if a party does not allege facts which could, if established at trial, entitle him to relief. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

        In assessing the merits of a motion to dismiss, a court's obligation to accept allegations as true does not apply to legal conclusions.  Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (internal citations omitted) (citing *Twombly*, 550 U.S. at 555, 557).  Thus, a court

must first identify those allegations in a complaint that are mere conclusions and are not entitled to an assumption of the truth and then consider whether the complaint's factual allegations plausibly suggest an entitlement to relief. *Id*. at 678.

*Pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (stating that the court must view a *pro se* litigant's complaint under a lenient standard). Accordingly, the court should construe the complaint liberally, drawing fair inferences and applying the applicable law, irrespective of whether the *pro se* plaintiff has mentioned it by name. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003). However, even a *pro se* plaintiff must be able to prove a "set of facts in support of his claim which would entitle him to relief." *Haines*, 404 U.S. at 520-21 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

**III.       Discussion**

      **A.       Claims Pursuant to the Federal Tort Claims Act**

As an initial matter, the court notes that the complaint sets forth several claims that appear to be brought pursuant to the Federal Tort Claims Act against the United States, the Department of the Navy, and the individual defendants. The FTCA provides jurisdiction for suits against the United States for torts allegedly committed by federal officials. Because the only proper defendant in an FTCA suit is the United States itself, the court will dismiss the Department of the Navy and the individual defendants from all FTCA claims. *See Lomando v. United States*, 667

F.3d 363, 378 (3d Cir. 2011) ("The 'exclusive remedy' provision of the FTCA is intended to substitute the United States as the solely permissible defendant.")

### B. Counts I & II: Claims Related to Defendants' Failure to Correct Military Records

In Counts I and II of the complaint, Walsh alleges that the letters Jones directed Newman, Buttram, and Amos to issue to the BCNR were defamatory and in violation of 18 U.S.C. § 1001, with damages available to him pursuant to Section 1983. (Doc. 1, ¶¶ 16-17.) Walsh also alleges that the failure to correct his military record violated 10 U.S.C. § 1552 and his due process rights (*id.*), and that George and Pfeiffer's refusal to permit him to appear before the NDRB violated 10 U.S.C. § 1553, SECNAVINST 5420.174D, and his due process rights, thereby warranting damages (*id.* at ¶¶ 19-20). Presumably proceeding under the FTCA, Walsh further claims that he is entitled to damages for pain and suffering. (*Id.* at ¶ 20(a).)

Walsh's claim that Newman, Buttram, Amos, and Jones's issuance of the allegedly false letters violated 18 U.S.C. § 1001, a criminal statute, will be dismissed easily. A private party has no right to enforce criminal statutes, *see Leeke v. Timmerman*, 454 U.S. 83, 85-86 (1981), and 18 U.S.C. § 1001 does not provide for a private right of enforcement, *see Walsh*, 2006 WL 1617273 at *5 (citing *Three Rivers Ctr. for Ind. Living v. Housing Auth.*, 382 F.3d 412, 420 (3d Cir. 2004) ("A court must look to the text of the statute to see if it states, by its terms, that a private party may bring suit to enforce it.")).

Any claim seeking damages under the FTCA for the allegedly false letters and defamatory statements will also be dismissed because claims of libel, slander, and defamation are excluded under the FTCA. *See* 28 U.S.C. § 2680(h)

("Any claim arising out of . . . libel, slander, misrepresentation, [and] deceit" is excepted from the United States's general waiver of sovereign immunity."); *see also Brumfield v. Sanders*, 232 F.3d 376, 382 (3d Cir. 2000) (stating that defamation suits against the United States are prohibited"). To the extent Walsh is asserting a defamation claim under *Bivens* rather than the FTCA, the claim will likewise be dismissed because an individual "defamed by a federal employee acting within the scope of his or her employment has no remedy due to the protections afforded by the Westfall Act and the FTCA." *Brumfield*, 232 F.3d at 382. Moreover, "a *Bivens* claim cannot rely on the theory of respondeat superior." *Turney v. Attorney Gen. for the U.S. ex rel. Sec'y of Labor*, 502 F. App'x 180, 182 (3d Cir. 2012).

Walsh's next claim appears to be related to the BCNR's failure to correct his military record in violation of 10 U.S.C. § 1552 and his due process rights. Ordinarily, BCNR decisions are reviewable by the district court under the APA. *See Piersall v. Winter*, 435 F.3d 319, 324 (D.C. Cir. 2006). In reviewing the decision, the court may set aside agency determinations that are found to be "arbitrary, capricious, unsupported by substantial evidence, or contrary to law." *Porter v. United States*, 163 F.3d 1304, 1312 (Fed. Cir. 1998). However, the plaintiff bears the "unusually heavy burden of proof in showing that the determination was arbitrary and capricious." *Koretsky v. United States*, 57 Fed. Cl. 154, 158 (2003); *Dodson v. United States*, 988 F.2d 1199, 1204-05 (Fed. Cir. 1993). Here, Walsh has failed to provide any facts to support a claim for failure to correct his military record. Although he asserted jurisdiction under the APA and brought a claim pursuant to 10 U.S.C. § 1552, presumably related to the BCNR denying his petition, Walsh did not allege either that the BCNR's decision was arbitrary or

capricious nor that the BCNR's decision was wrong based on the record before it. Rather, Walsh alleged that the BCNR denied his petition due to Newman, Buttram, Amos, and Jones's interference with the process.  Thus, Walsh has failed to assert a claim related to the BCNR's failure to correct his record.  Confirming the court's assessment is Walsh's own statement clearly indicating that he is not appealing the BCNR's decision.  (*See* Doc. 50, pp. 2, 14 of 26 (stating that the defendants' arguments in support of their position that the BCNR's decision satisfied the APA are "worthless" and "totally miss[ ] the gravamen of [the] complaint" because his claims "are external from the BCNR process").)

    Walsh's claim will similarly fail to the extent he attempts to assert a *Bivens* claim against Newman, Buttram, Amos, and Jones for their purported interference with the BCNR process resulting in the denial of his petition.  The regulatory process created by Congress to permit the BCNR to decide issues related to the correction of military records provides a meaningful remedy to address such claims with review limited under the APA.  Therefore, the court will not extend *Bivens* to reach a claim against the individual defendants related to the BCNR's decision.  *See Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988) (indicating reservation to extend *Bivens* remedies into new contexts).

    Even assuming, *arguendo*, that Walsh could assert a valid *Bivens* claim in this regard, he has failed to state a viable claim for which relief could be granted. Indeed, Walsh has failed to provide any facts establishing that the individual defendants violated his constitutional rights.  His allegations against Newman, Buttram, and Amos, *i.e.*, that they issued two false letters omitting his clear entitlement to the awards, do not amount to a violation of his constitutional rights.

As for his claims against Jones, Walsh has failed to support his conclusory statements with factual allegations, stating only that Jones used his "criminal influence" to direct Buttram, Newman, and Amos to issue the false letters and that Jones "continues to wrongly and criminally step on Walsh's attempts to correct his records." (Doc. 1, ¶ 18.) "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Accordingly, Walsh's claim for failure to correct his military record will be dismissed.

      Walsh's next claim that George and Pfeiffer refused his request to appear before the NDRB in violation of his statutory and constitutional rights will also be dismissed. The NDRB is comprised of five military officers, and its role is "to review the discharge or dismissal . . . of any former member of an armed force." *Lefrancois v. Mabus*, 910 F. Supp. 2d 12, 15 (D.D.C. Nov. 30, 2012). However, the complaint and the attachments thereto relate only to Walsh's efforts to correct his military record, rather than to challenge his discharge. (*See generally* Doc. 1-2.) Thus, according to the complaint, Walsh would have no right to appear before the NDRB because he did not petition the NDRB to review his discharge. To the extent Walsh's claim concerns his alleged right to retroactive disability payments due to the BCNR's April 22, 2013 misstatement that he was medically retired in 1996, as discussed *infra* Part III.D., Walsh acknowledges that the statement is erroneous. (Doc. 45-1, p. 157 of 178.) As such, there would be no occasion for a hearing as to whether he medically retired and is entitled to disability payments. Furthermore, Walsh's allegation that George and Pfeiffer violated his rights when they denied his request to appear before the NDRB is nothing "more than an unadorned, the-

defendant-unlawfully-harmed-me accusation," *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009), which must be dismissed under the federal pleading standards.

Accordingly, for all of the reasons stated above, Counts I and II will be dismissed.

### C. Count III: Denial of Access to the Navy Annex

In Count III, Walsh alleges that, because he is "100% disabled," George and Pfeiffer violated the ADA by denying him access to the Navy Annex on April 8, 2013. (Doc. 1, ¶ 21.) Unfortunately, Walsh provides no explanation as to how this alleged denial of entry to the Navy Annex invokes the ADA or violates any provision of the ADA, and therefore, such a claim fails under *Iqbal* and will be dismissed.

### D. Count IV: Failure to Pay Missing Disability Payments

In Count IV, Walsh claims he is entitled to past disability payments due to the BCNR's erroneous statement that he retired in 1996 due to diabetes, *i.e.*, that he was medically retired. (Doc. 1, ¶ 11.) Although Walsh has characterized the statement as both "false" (*id*.; Doc. 45-1, p. 157 of 178) and a "bold faced lie" (Doc. 45-1, p. 157 of 178), he asserts that the statement nevertheless entitles him to an advance in ranking, pursuant to 10 U.S.C.A. § 1372, and to an award of missing disability payments in the amount of $693,264.00 (Doc. 1, ¶ 11). However, Walsh did not—and, indeed, could not—cite to any authority conferring upon him a right to receive nearly $700,000.00 in disability payments and an advance in rank due to a clearly erroneous statement in a decision denying his petition to correct his military records that was written nearly twenty years after he retired. Stated simply, it is

uncontroverted that Walsh did not medically retire from the Navy and, therefore, is not entitled to disability payments. Because Walsh acknowledges that he was not medically retired, Count IV does not establish his entitlement to relief and must be dismissed.

### E.     Count V: Interference With Congressional Correspondence

In Count V, Walsh alleges that Jones and Amos intercepted correspondence from the Secretary of the Navy to Congressman Perry in violation of Section 1983. In support of this claim, Walsh asserts that: (1) Congressman Perry has not received any letters from the Secretary of the Navy because Jones intercepted them (Doc. 1, ¶ 23); (2) Jones and Amos have "block[ed] and illegally answer[ed]" congressional communications from the Secretary of the Navy (*id.* at ¶ 24); and (3) "Jones and Amos[ ] use [the] intercepted Congressional correspondence to ensure [the Secretary of the Navy] is in the dark on their abuses . . . [and] open crimes, and also . . . as a medium to convey future threats to disabled veteran Walsh and his family." (*Id.*) Even accepting the foregoing accusations as true, Plaintiff's complaint may be interpreted as only asserting an action for the defendants' intercepting Congressman Perry's mail. In this regard, Plaintiff attempts to bring a cause of action for an alleged injury-in-fact sustained by another. Plaintiff has not averred any relationship to Congressman Perry that would authorize him to have standing to bring a claim on the congressman's behalf. Accordingly, Count V will be dismissed for lack of standing.

### F.     Count VI: Interstate Stalking

In his final claim of the complaint, Walsh asserts that Jones "continues to abuse national agencies [to] stalk and strike at Walsh and his family," and vaguely

describes an incident wherein Jones, using his access to the FBI, placed Walsh under illegal surveillance and stalked him and his sons at Red Robin and Best Buy. (Doc. 1, ¶ 25.) Walsh claims that these incidents constitute violations of 18 U.S.C. § 2261A,[6] a criminal statute, and Section 1983.

As stated above, *supra* Part III.B., a private party has no right to enforce federal criminal statutes and 18 U.S.C. § 2261A does not provide a private right of enforcement. Accordingly, any claim grounded in 18 U.S.C. § 2261A must be dismissed. Further, Walsh's assertions do not rise to a constitutional level; at best, he alleges a tort that cannot support a *Bivens* claim. In any event, Jones retired prior to these incidents and is, therefore, outside the scope of a *Bivens* claim. Accordingly, Count VI will be dismissed.

### G. New Claims Asserting Violations of the Privacy Act

In his opposition to the motion to dismiss, Walsh asserts that certain exhibits filed by the defendants in support of their motion give rise to a new claim for a violation of the Privacy Act of 1974, 5 U.S.C. § 552a. Walsh's claims fail even if the court were to accept his allegations as an attempt to amend his complaint to aver such an allegation.

The documents submitted by the defendants were all part of the administrative record before the BCNR. (*See* Doc. 45, p. 10 of 25 n.4; *see generally* Doc. 45-1.) The BCNR's System of Record pertains to "[a]ny member or former member of the U.S. Navy or Marine Corps who has applied for the correction of his/her naval record." 73 FR 5828. Among its purposes is "to review [an]

---

[6] 18 U.S.C. § 2261A pertains to interstate stalking by an individual with the intent to kill, injure, harass, or intimidate so as to place a reasonable person, or their immediate family member, in fear of death or serious bodily injury.

applicant's Naval record to determine the existence of alleged error or injustice and to recommend appropriate corrective action when warranted," and to provide records "[t]o officials and employees of the General Litigation Division, Office of the Judge Advocate General, Department of the Navy to prepare legal briefs and answers to complaints filed against the Department of the Navy." *Id.*

      Ordinarily, an agency must not disclose any record which is contained in a system of records to any person or to another agency without the prior written consent of the individual to whom the record pertains. 5 U.S.C. § 552a(b). However, an agency may disclose a record to "those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties," *id.* at § 552a(b)(1), or, *inter alia*, "for a routine use," *id.* at § 552a(b)(3). A "routine use" is defined as the "use of such a record for a purpose which is compatible with the purpose for which it was collected." *Id.* at § 552a(a)(7). The Department of the Navy's Blanket Routine Uses further provides, *inter alia*:

> A record from a system of records maintained by a [Department of Defense] component may be disclosed as a routine use to any component of the Department of Justice for the purpose of representing the Department of Defense, or any officer, employee, or member of the Department in pending or potential litigation to which the record is pertinent.

32 C.F.R. § 701.112; 32 C.F.R. Pt. 505, App. D(d)(9). An attorney with the Department of Justice is thereafter authorized to release the records to the court as he or she deems necessary or desirable. 28 C.F.R. § 16.23(a).

      Here, Walsh asserted jurisdiction, in part, under the APA. Presuming that he had done so in an effort to appeal the BCNR's decision denying his request to

15

correct his military record, the Assistant United States Attorney ("AUSA") produced Walsh's BCNR record in an effort to establish that the BCNR's decision was not arbitrary or capricious. (*See* Doc. 45, pp. 7-8 of 25; Doc. 58, p. 4 of 12.) Indeed, the documents produced by the defendants concerned only the purported APA claim or directly addressed whether Walsh had pleaded viable claims based on the documents he himself referenced throughout his complaint but did not produce in their entirety. Although Walsh contends that some of the documents, including the "Master Brief Sheets" and his medical records, were improperly included in his BCNR file because he did not submit them in support of his petition (*see* Doc. 50, p. 6), the fact remains that they were a part of his BCNR record[7] (*see* Farris Decl., ¶¶ 3-8). As such, the AUSA properly exercised her discretion when she produced the record to the court as she deemed necessary to defend the instant action. Accordingly, any Privacy Act claim regarding the production of these documents will fail.[8]

---

[7] If Walsh believes the documents are not properly part of his BCNR record, he may request correction of his record in accordance with 5 U.S.C. § 552a(d). Only after he exhausts administrative relief may he seek judicial review under 5 U.S.C. § 552a(g)(1).

[8] Walsh has filed a "Cross-Motion for Partial Summary Judgment Due to Willful Release of Protected Data" (Docs. 51-53) related to the production of these documents. In his motion, Walsh alleges that the filing of the documents was a "deliberate and vicious act" that entitles him to partial summary judgment against the Navy, Pfeiffer, and George" on Count IV of the complaint concerning his claim for prior disability retirement payments (Doc. 51, ¶ 4), and seeks an award in the amount of $925,000.00 (*id.* at ¶¶ 9, 12). Because the court concluded that Walsh failed to state a claim for a Privacy Act violation, Walsh's motion for summary judgment (Doc. 51) will be deemed moot. The court further notes that even if the production of the documents had amounted to a violation of the Privacy Act—which it did not—such a violation would not entitle Walsh to summary judgment on an unrelated disability payment claim.

### H. Leave to Amend

Although Federal Rule of Civil Procedure 15(a) provides that "leave [to amend] shall be freely given," the court may deny leave to amend when it would be futile. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997). Walsh has unsuccessfully brought a multitude of similar claims with similar sets of facts in several jurisdictions. *See supra* n.1. Indeed, by his own admissions, he is seeking "punitive and compensatory damages for wrongs sustained, *over the last 23 years by the named and served defendants*" and has been "unsuccessful" in his efforts for "*over 23 years.*" (Doc. 1 at ¶¶ 2, 5 (emphasis added).) Walsh has had ample opportunity to perfect his claims and an additional opportunity here would be futile. Accordingly, the court will withhold leave to amend.

### IV. Conclusion

For the reasons stated above, Defendants' motion to dismiss will be granted in its entirety and leave to amend the complaint will be denied as futile.

An appropriate order will issue.

                                                   s/Sylvia H. Rambo
                                                   United States District Judge

Dated: January 29, 2015.